STATE OF NORTH DAKOTA           IN DISTRICT COURT

COUNTY OF WARD         NORTH CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| ROBERT MAU, and EAGLE WELL SERVICES, INC., | Case No. 51-2016-CV-01386 |
| Plaintiff, | **SUMMONS** |
| v. | |
| TWIN CITY FIRE INSURANCE CO., | |
| Defendant. | |

The State of North Dakota to the above named Defendant:

    You are hereby summoned and required to appear and defend against the complaint in this action, which is herewith served upon you, by serving upon the undersigned an answer or other proper response within twenty-one (21) days after the service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

    Dated:  August 17, 2016

                     By:  MOYE WHITE LLP

                     William F. Jones, ND #07680
                     Jason D. Hermele, ND #07636
                     1400 Sixteenth Street – Sixth Floor
                     Denver, CO 80202-1486
                     Tel.: (303) 292-2900
                     FAX: (303) 292-4510
                     Email:  billy.jones@moyewhite.com
                     Email:  jay.hermele@moyewhite.com

                     *Attorneys for Plaintiffs*

02707136.1

**EXHIBIT**

*A*

STATE OF NORTH DAKOTA

COUNTY OF WARD

IN DISTRICT COURT

NORTH CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| ROBERT MAU, and EAGLE WELL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE CO., <br><br> Defendants. | Case No. 51-2016-CV-01386 <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs, Robert Mau and Eagle Well Services, Inc., hereinafter ("Plaintiffs") by and through their attorneys, Moye White LLP, submit the following Complaint and Jury Demand.

### INTRODUCTION

[¶1]   This case arises from Defendants' repeated and continuing denial of insurance coverage and refusal to pay any defense or indemnity costs incurred by Robert Mau and Eagle Well Services, Inc. while defending a lawsuit brought by Sun Well Services, Inc. Defendant's coverage denial was, and continues to be, made in bad faith.  Plaintiffs are entitled to recover all of their defense and indemnity costs up to the policy limits and additional damages for Defendant's breach of the duty of good faith and fair dealing.

### PARTIES, JURISDICTION AND VENUE

[¶2]   Robert Mau ("Mau") is an individual residing in the state of North Dakota.  Mau is an officer of Eagle Well Services, Inc. ("Eagle Well"), as well as an officer of MW Industries, Inc. ("MW").

[¶3]   Eagle Well Services, Inc. ("Eagle Well") is a North Dakota corporation.

02713390.1

[¶4]   Twin City Fire Insurance Company ("Twin City" or the "Insurance Company") is the named insurer.

[¶5]   This Court has subject matter jurisdiction in this case because all claims arise under the statutory and common law of North Dakota.

[¶6]   This Court has personal jurisdiction over the Insurance Company because it conducts business in North Dakota.

[¶7]   Venue is proper with this Court because the Insurance Company conducts business in Ward County. N.D.C.C. § 28-04-05.

## FACTUAL BACKGROUND

### A.   The Asset Purchase Agreement

[¶8]   On February 9, 2012, Eagle Well, Mau, Well Services, Ltd., and other parties executed an Asset Purchase Agreement (the "APA").

[¶9]   Pursuant to the APA, Well Services, Ltd. ("Well Services") paid $48,130,924.00 for certain assets of Eagle Well, an oil well services business.

### B.   The Insurance Policy

[¶10]   The Insurance Company insured Eagle Operating, Inc. under a Private Choice Encore®!! Policy.   Eagle Operating, Inc. was the insured under policy number 00 KB 0228155-13 that became effective April 29, 2013 (the "Policy").

[¶11]   The Policy provides that "The Insurer shall pay Loss on behalf of Insured Persons resulting from an Insured Person Claim first made against the Insured Persons during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act by

2

the Insured Persons, except for Loss than an Insured Entity pays to or on behalf of the Insured Persons as indemnification."

[¶12] The Policy defines Insured Persons as "any Manager or Employee."

[¶13] The Policy defines Insured Entity as "(1) the Named Entity; or (2) any Subsidiary."

[¶14] Endorsement 2, attached hereto as **Exhibit A**, included the following entities as covered subsidiaries:

      a.    Eagle Well Service, Inc.

      b.    Star Well Services, Inc.

      c.    MW Industries, Inc.

[¶15] Endorsement 2 was effective at 12:01 A.M. on April 29, 2013. **Exhibit A.**

[¶16] Endorsement 2 was in force on January 17, 2014. **Exhibit A.**

[¶17] The Policy requires that "[a]ll notices to the **Insureds** shall be sent to the **Named Entity** at the address specified in ITEM 1 of the Declarations."

[¶18] The Policy did not permit the Insurance Company to satisfy its notice requirement by communicating solely with Plaintiffs' insurance broker.

[¶19] The Policy did not permit the Insurance Company to create retroactive endorsements.

[¶20] The Insurance Company created Endorsement 10 approximately two months after Plaintiffs presented the Claim. Endorsement 10, which is attached hereto as **Exhibit B**, included MW as a covered subsidiary.

3

C.   **The Underlying Litigation**

[¶21]  On December 27, 2013, Sun Well commenced Civil Case No. 51-2013-CV-01461 against Eagle Well and Mr. Mau and other parties.

[¶22]  Sun Well sought damages of $23,000,000.00, based on claims of (1) breach of contract, (2) fraud, and (3) civil conspiracy.

[¶23]  The Lawsuit arose from Well Services, Eagle Well, Mr. Mau, and the remaining shareholders in Eagle Well's execution of a written Asset Purchase Agreement (the "APA"), effective February 9, 2012, for the sale of the assets and business of Eagle Well to Well Services, and alleged events occurring before and thereafter.

[¶24]  Sun Well alleged that Mr. Mau breached a covenant not to compete contained in the APA by causing MW to manufacture two well service rigs for American Well Service—a well servicing company—to compete against Sun Well.

[¶25]  Among other things, Sun Well sued Mau individually based on his role as an officer of MW.  Sun Well's complaint included numerous allegations against Mau as an officer of MW, including without limitation:

  a.   "Upon information and belief, in April 2012, Robert Mau and Gregory Wiedmer arranged for MW to sell the two original rigs to American Well Service once Gregory Wiedmer had formed American Well Service. Robert Mau and Gregory Wiedmer concealed this fact from Well Services."

  b.   "Upon information and belief, Robert Mau sold the well servicing rigs to American Well Service rather than Well Services, and upon terms substantially more favorable than the industry standard and substantially more favorable than the terms offered to Well Services, in order to assist Gregory Wiedmer and American

4

Well Service to get started in their business and compete against Well Services (now Sun Well)."

[¶26] Sun Well further alleged that "Mau controls a company called MW Industries, which builds service rigs. When American Well bought rigs from MW in mid-2012, MW gave American Well the rigs for no money down, in exchange for millions of dollars of later-executed IOUs [...] MW had those rigs available to sell to American Well only because of another deceit by Mau."

[¶27] In response to written discovery, Sun Well asserted that "Mau, through MW Industries, negotiated with Wiedmer to provide Wiedmer and American Well with five rigs on terms significantly more favorable than in its normal course of business. Upon such information and belief, American Well took possession of the rigs in July 2012, November 2012, February 2013, August 2013, and November 2014. The rigs were delivered from MW Industries in Ward County. At this time, Sun Well has no information as to where or when these negotiations or agreements occurred."

D.   **The Insurance Company's Bad Faith Coverage Denial**

[¶28] Plaintiffs made a claim to the Insurance Company on January 17, 2014 (the "Claim").

[¶29] At the time that Plaintiff made the Claim, Endorsement 2 was in-force. **Exhibit A.**

[¶30] Endorsement 2 was effective at 12:01 A.M. on April 23, 2013.  **Exhibit A.**

[¶31] The Insurance Company advised that it was denying the Claim on June 6, 2014. **Exhibit C.**

5

[¶32] The Insurance Company's denial relied on Endorsement 10, which states that it was effective at 12:01 A.M. on April, 29, 2013. **Exhibit B.**

[¶33] The Insurance Company's denial relied on the fact that Eagle Well was not a named subsidiary on Endorsement 10. **Exhibit C.**

[¶34] Eagle Well was listed as a named subsidiary according to Endorsement 2.

[¶35] Unbeknownst to Eagle Well or Mau *at the time*, the Insurance Company created Endorsement 10 over two months after presentation of the Claim. **Exhibit D.**

[¶36] Underwriting Specialist Susan Carley attempted to backdate Endorsement 10 to April 29, 2013. **Exhibit D.**

[¶37] The Insurance Company never provided notice directly to Eagle Well or Mau regarding the removal of Eagle Well from the Endorsement.

[¶38] The Insurance Company never provided notice directly to Eagle Well or Mau regarding the creation of Endorsement 10.

[¶39] The Insurance Company never provided notice directly to Eagle Well or Mau regarding Twin City's attempt to make Endorsement 10 retroactive.

[¶40] Endorsement 10 did not exist at the time of presentation of the Claim.

[¶41] The Insurance Company knew that Endorsement 10 did not exist at the time of presentation of the Claim.

[¶42] The Insurance Company intentionally created Endorsement 10 to exclude Eagle Well as an insured.

[¶43] The Insurance Company concealed the basis of its coverage denial from Eagle Well and Mau.

6

[¶44] Even if Endorsement 10 did apply to the Claim, The Insurance Company was still required to provide coverage for defense and indemnity costs incurred in the defense of Sun Well's allegations against Mau as an officer of MW.

[¶45] Mau and Eagle Well provided additional information regarding Sun Well's allegations against Mau and Eagle Well to The Insurance Company in a letter dated January 5, 2016 and during a January 11, 2016 phone conversation.

[¶46] Having not received any response from The Insurance Company, Mau and Eagle Well followed up again with letter dated January 22, 2016.  The Insurance Company did not respond.

[¶47] Mau and Eagle Well followed up again in a letter dated February 12, 2016.

[¶48] After conducting no additional investigation, The Insurance Company denied the Claim again on February 22, 2016.

[¶49] Mau and Eagle Well provided more information to The Insurance Company in a letter dated March 9, 2016.

[¶50] The Insurance Company retained an attorney and denied the claim again on March 24, 2016.

[¶51] The Insurance Company's attorney requested additional information regarding the claim. Mau and Eagle Well provided the requested information.

[¶52] The Insurance Company's attorney denied the Claim again on May 13, 2016.

[¶53] The Insurance Company's denial is ongoing.

[¶54] The Insurance Company has unreasonably delayed the claim.

7

[¶55] The Insurance Company favored its own interests over those of Eagle Well and Mau by secretly relying on an endorsement that it created after presentation of the Claim.

[¶56] The Insurance Company failed to conduct a reasonable investigation of the allegations asserted by Sun Well against Mau and Eagle Well in the Underlying Litigation.

[¶57] The Insurance Company has repeatedly favored its own interests over that of its insureds.

[¶58] The Insurance Company's denials of coverage were, and continue to be, unreasonable.

[¶59] The Insurance Company knew, and knows, that its denials of coverage were, and are, unreasonable.

[¶60] The Insurance Company has engaged in unfair claim settlement practices including, without limitation, violation of N.D.C.C. § 26.1-04-03.

[¶61] The Insurance Company has, and continues to, breach the implied covenant of good faith and fair dealing that applies to insurance policies.

[¶62] The Insurance Company has, and continues to, act in bad faith.

[¶63] The Insurance Company's bad faith breach of the duty of good faith and fair dealing has caused, and continues to cause, damages to Eagle Well and Mau.

[¶64] The Insurance Company has not paid any amount of defense costs or indemnity dollars to Eagle Well and Mau relating to the Underlying Litigation.

## FIRST CLAIM FOR RELIEF
### (Declaratory Action)

[¶65] Plaintiffs incorporate each of the above allegations as if fully set forth herein.

8

[¶66] At the time that Plaintiffs presented the Claim to The Insurance Company, Endorsement 2 was in force.

[¶67] The Insurance Company created Endorsement 10 after Plaintiffs presented the Claim.

[¶68] The Insurance Company attempted to make Endorsement 10 retroactive to a time before Plaintiffs presented the claim.

[¶69] The Insurance Company failed to provide Plaintiffs with notice as required by the Policy.

[¶70] Pursuant to N.D.R.Civ.P. 57, Plaintiffs seek a declaration that:

    a.    Endorsement 2 is the effective endorsement for the purposes of the Claim;

    b.    The Insurance Company failed to comply with the notice provisions in the Policy;

    c.    Endorsement 10 is void;

    d.    The Insurance Company is responsible for Plaintiffs' defense costs incurred in the Underlying Litigation; and

    e.    The Insurance Company is responsible to indemnify Plaintiffs for all amounts paid to resolve the Underlying Litigation up to the policy limits.

## SECOND CLAIM FOR RELIEF
### (Breach of the Duty of the Implied Covenant of Good Faith and Fair Dealing)

[¶71] Plaintiffs incorporate each of the above allegations as if fully set forth herein.

[¶72] The Insurance Company owed a duty of good faith and fair dealing to Plaintiffs.

9

[¶73] The Insurance Company breached the duty of good faith and fair dealing by:

    a.    Unreasonably denying coverage to Plaintiffs;

    b.    Attempting to make Endorsement 10 retroactive;

    c.    Concealing the creation of Endorsement 10 from Plaintiffs;

    d.    Failing to notify Plaintiffs directly of the creation of Endorsement 10;

    e.    Relying on Endorsement 10 to deny coverage; and

    f.    Favoring its own interests over those of Plaintiffs.

[¶74] The Insurance Company knew or recklessly disregarded the unreasonableness of its positions.

[¶75] The Insurance Company's unreasonable conduct has caused Plaintiffs to incur injuries, damages and losses in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

[¶76] Plaintiffs incorporate each of the above allegations as if fully set forth herein.

[¶77] The Policy is a contract wherein the Insurance Company agreed to pay defense and indemnity costs incurred by Plaintiffs.

[¶78] Plaintiffs complied with all conditions precedent to insurance coverage under the Policy.

[¶79] The Insurance Company breached the contract by refusing to pay any defense or indemnity costs incurred by Plaintiffs.

[¶80] The Insurance Company's breach caused Plaintiffs to incur damages in an amount to be determined at trial.

[¶81] Plaintiffs respectfully request the Court declare that:

10

      a.     Endorsement 2 is the effective endorsement for the purposes of the Claim;

      b.     The Insurance Company failed to comply with the notice provisions in the Policy;

      c.     Endorsement 10 is void;

      d.     The Insurance Company is responsible for Plaintiffs' defense costs incurred in the Underlying Litigation; and

      e.     Insurance Company is responsible to indemnify Plaintiffs for all amounts paid to resolve the Underlying Litigation up to the policy limits.

[¶82] Plaintiffs further request that the Court enter judgment against Insurance Company for:

      a.     Breach of the duty of good faith and fair dealing;

      b.     Breach of contract;

**PLAINTIFFS DEMAND A JURY REGARDING ALL TRIABLE CLAIMS.**

11

Dated:  August 17, 2016

BY:  /s/

William F. Jones, ND #07680
Jason D. Hermele, ND #07636
16 Market Square – Sixth Floor
1400 Sixteenth Street
Denver, CO 80202-1486
Tel.: (303) 292-2900
FAX: (303) 292-4510
Email:  billy.jones@moyewhite.com
Email:  jay.hermele@moyewhite.com

*Attorneys for Plaintiffs*

02713390.1

ENDORSEMENT NO:    2

`s endorsement, effective 12:01 am,        4/29/13                     forms part
.. policy number      00 KB 0228155-13

Issued to:        EAGLE OPERATING, INC.

by:               TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADD SUBSIDIARY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PRIVATE CHOICE ENCOREII POLICY

COMMON TERMS AND CONDITIONS, section II. COMMON DEFINITIONS, (W) "Subsidiary", is amended by the addition of the following:

Subsidiary also means:

EAGLE WELL SERVICE, INC.
STAR WELL SERVICES, INC.
MW INDUSTRIES, INC,

All other terms and conditions remain unchanged.

David Zwiener, President

Exhibit
A

PE 00 H074 02 0808                    © 2008, The Hartford                    Page 1 of 1

ENDORSEMENT NO:   10

This endorsement, effective 12:01 am,          4/29/13                                              forms part
of policy number     00 KB 0228155-13

Issued to:          EAGLE OPERATING, INC.

by:                 TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADD SUBSIDIARY ENDORSEMENT

This endorsement modifies insurance provided under the following:

PRIVATE CHOICE ENCORE!! POLICY

COMMON TERMS AND CONDITIONS, section II. COMMON DEFINITIONS, (W) "Subsidiary", is amended by the addition of the following:

Subsidiary also means:

STAR WELL SERVICES, INC.
MW INDUSTRIES, INC.

All other terms and conditions remain unchanged.

David Zwiener, President

Exhibit

**B**

PE 00 H074 02 0608                    © 2008, The Hartford                          Page 1 of 1



THE
HARTFORD

June 6, 2014

Julie Ann Levinsohn, Esq.
Senior Claims Consultant
Tel: 212-277-0792
Fax: 212-277-0945
Julie.Levinsohn@Thehartford.Com

VIA EMAIL: jodyj@rastel.com

Jody Jensen
Eagle Operating, Inc.
1222 N. Central Avenue
P.O. Box 853
Kenmare, ND 58746

Re:   **Insurer:**        Twin City Fire Insurance Co.
      **Insured:**        Eagle Operating, Inc.
      **Policy:**         Private Choice Encore!!
      **Policy No.:**     KB 0228155
      **Matter:**         Sun Well Services, Inc.
      **Ref. No.:**       14404966

Dear Ms. Jensen:

Twin City Fire Insurance Co. ("Twin City") further acknowledges its January 17, 2014 receipt of your broker's correspondence forwarding a demand letter from Sun Well Services, Inc. ("Sun Well"), successor in interest to Well Services, LTD ("Well Services"), alleging breach of contract and demanding indemnification (the "Demand Letter"), as well as its March 19, 2014 receipt of a lawsuit filed by Sun Well against Robert Mau, Eagle Well Services, Inc. ("EWS"), Gregory Wiedmer, and American Well Service, LLP ("AWS") ("the Lawsuit"). Eagle Operating, Inc. ("EOI") has submitted this matter for coverage under the Private Choice Encore!! Policy No. KB 0228155 issued to EOI, effective for the Policy Period of April 29, 2013 to April 13, 2014. **At this time, I regret to inform you that there is no coverage for this matter for the reasons stated in this letter.**

We have addressed this letter to you as the Insured's representative for receipt of insurance materials. If you are not the person to whom such materials should be directed, please forward this to the appropriate person and advise us accordingly.

As you know, I am managing this matter on behalf of Twin City. Please direct all communications to my attention, using Twin City reference number 14404966.

**THE POLICY**
Twin City issued Private Choice Encore!! Policy No. KB 0228155 ("the Policy") to EOI, effective for the Policy Period of April 29, 2013 to April 13, 2014 ("the Policy Period").[1] The Directors,

---

[1] Capitalized terms are defined in the Policy.

**Exhibit**

**C**

Jody Jensen
Eagle Operating, Inc.
June 6, 2014
Page 2

Officers and Entity Liability ("D&O") Coverage Part of the Policy has a limit of liability of $1,000,000 in the aggregate, and is subject to a Retention of $10,000 for the entity, $10,000 for corporate reimbursement, and $0 for Insured Person aggregate, as set forth in the Policy's Declarations.

**The Sun Well Matter**
Based on the information provided to Twin City, we understand that this matter involves Sun Well's allegations that Robert Mau and EWS breached an Asset Purchase Agreement ("APA") entered into between Well Services (now Sun Well) and EWS that contained non-competition provisions. In addition, the Lawsuit alleges fraud against Mau, EWS and Wiedmer, civil conspiracy against Mau, Wiedmer and AWS, and tortious interference with contract against Wiedmer. Specifically, under the terms of the APA by which Well Services purchased the assets of EWS on February 9, 2012, EWS and its shareholders were prohibited from competing with Well Services; Sun Well now alleges that Robert Mau and EWS violated this provision in April 2012 by forming a competing entity with Gregory Wiedmer, AWS. Sun Well asserts further that Mau provided financial support to AWS by offering, through an EOI Subsidiary, MW Industries, Inc. ("MW"), more favorable terms on equipment that Sun Well had intended to buy, thereby enabling AWS to compete with Sun Well. Sun Well contends that Mau, Wiedmer, and AWS conspired together such that, after Sun Well purchased EWS, Mau would form AWS with Wiedmer and compete against Sun Well indirectly through AWS and Wiedmer.

In the Demand Letter, Sun Well also contends that Mau and other EWS shareholders must indemnify Sun Well for the loss it incurred from the alleged competition.

We recognize that the allegations set forth in the Demand Letter and the Lawsuit are unsubstantiated at this time. Nothing contained in this letter suggests that the allegations have any legal or factual merit.

**COVERAGE POSITION**
Initially, we note that given the nature of the claims alleged, the relevant part of the Policy is the D&O Coverage Part. Accordingly the coverage evaluation below relates to the D&O Coverage Part of the Policy.

Next, we note that the scope of coverage afforded by the Policy is set forth in Section I of the D&O Coverage Part of the Policy, as follows:

I.   INSURING AGREEMENTS

(A)   Insured Person Liability

The Insurer shall pay **Loss** on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** that an **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

(B)   Corporate Reimbursement

Jody Jensen
Eagle Operating, Inc.
June 6, 2014
Page 3

The Insurer shall pay **Loss** on behalf of an **Insured Entity** that such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons.**

(C)     Entity Liability (Elective)

If Entity Liability Coverage is included in Item 5 of the Declarations, the Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from an **Entity Claim** first made against such **Insured Entity** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Entity.**

First, with respect to Insureds, EOI is the named insured on the Policy. EWS and AWS are not listed as named insureds on the Policy, nor are they named as additional insureds via endorsement. As a result, EWS and AWS are not insureds under the Policy, thus no coverage is available for them, nor for their officers, directors or employees.[2]

Next, please note that the Insuring Agreements (quoted above) only reach matters alleging Wrongful Acts by Insureds, defined as EOI and its Managers and Employees and, per Endorsement No. 10, certain other entities and their Managers and Employees as well, in their capacities as such. Coverage is not available to shareholders, thus there is no coverage for Robert Mau, in his capacity as a shareholder, nor for Kathy Mau, Ray York, Kay York, Michael Johnson, or Kara Johnson, with respect to Sun Well's demand for indemnification from them, as shareholders, for the alleged competition by Mau and AWS. Coverage would not be available for them in any event, since their relationship to this matter derives from their shareholder relationship to EWS, a non-insured entity.

Also with respect to capacity, in that Sun Well alleges that Robert Mau breached the APA by operating another entity, AWS, to compete with Sun Well, it alleges wrongful acts undertaken by Mau in his AWS capacity, not his EOI capacity. Similarly, it appears that the Lawsuit alleges

---

[2] In this regard, we note that Endorsement No. 10 specifically names certain entities as Subsidiaries, but EWS is not among them. Further, while we recognize that prior to February 2012, EWS was a part of EOI and was specifically named as a Subsidiary under EOI's policy with Twin City in effect at that time, once it was sold to Sun Well, EWS ceased to be an EOI-related entity. In this regard, please see the Changes in Exposure provisions in the policy that EOI had in effect with Twin City before EOI sold EWS to Sun Well. Specifically, Section XIV(C) of the Common Terms and Conditions of that policy set forth that:

(C)     **Loss of Subsidiary Status**

If, before or during the Policy Period, any entity ceases to be a Subsidiary, then coverage shall be available under the Liability Coverage Parts for such Subsidiary and its Insured Persons, but only for a Wrongful Act of such Insureds occurring before such transaction. No coverage shall be available for any Wrongful Act of such Insureds occurring after such transaction.

Accordingly, after the transaction in which EWS was sold to Sun Well, coverage for EWS was available under that policy only for alleged acts by EWS occurring before the transaction. However, that policy expired on April 13, 2012 and, since no run-off or tail coverage was purchased for EWS, all coverage for EWS ceased altogether when that policy expired on April 13, 2012.

Jody Jansen
Eagle Operating, Inc.
June 6, 2014
Page 4

Mau breached the APA in either his personal or EWS capacities as well, which also would not garner coverage. The Lawsuit also alleges wrongful conduct on the part of Gregory Wiedmer in his AWS capacity, and potentially in his EWS capacity, thus, since AWS and EWS are not Insured Entities, no coverage is available for Wiedmer for this matter either.

We further note that Section IV.(l) of the D&O Coverage Part similarly bars coverage for this matter with respect in that it states, in pertinent part:

> The Insurer shall not pay Loss:
>
>                           *   *   *
>
> (l)   of an **Insured Person** based upon, arising from, or in any way related to such **Insured Person's** service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of any entity other than an **Insured Entity** even if such service is at the direction or request of such **Insured Entity**....;

This matter arises from and relates to Mau's and Wiedmer's alleged service on behalf of AWS and EWS, entities other than the Insured Entity, EOI. We note that the Policy does contain an Endorsement identifying certain other entities as Insured Subsidiaries under the Policy, but EWS and AWS are not among them.[3] Accordingly, the foregoing exclusion applies to preclude coverage for this matter.

We next draw your attention to Exclusion V(A)(1), which provides as follows:

> The Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:
>
> (1) liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

As Sun Well asserts breach of the APA and seeks indemnification under the provisions of that contract, no coverage is available for the entity, EOI, for this matter under this provision as well.[4]

In sum, there is no coverage for this matter for the following reasons:

1. No coverage is available for shareholders, since shareholders are not Insureds, thus no coverage is available for Mau, in his capacity as a shareholder (including his role as

---

[3] Endorsement No. 10 names Star Well Services, Inc., and MW Industries, Inc. as Subsidiaries under the policy. We note that while MW is referenced in the Lawsuit, it is not named and it does not appear that Mau and Wiedmer are being sued in their MW capacities. Rather, the Lawsuit appears to be alleging that MW was simply used as vehicle via which Mau and Wiedmer advanced their alleged conspiracy for Mau to compete with Sun Well indirectly through Wiedmer and AWS.

[4] We also note that the D&O Coverage Part also excludes from coverage matters where the Insureds may have gained personal profit, remuneration, or advantage to which they were not legally entitled, or engaged in any criminal or fraudulent conduct. In this regard, we note Sun Well's fraud and civil conspiracy allegations and reserve all rights with respect to these Exclusions.

Jody Jensen
Eagle Operating, Inc.
June 6, 2014
Page 5

signatory to the APA and subsequent, alleged, breach of that contract). Nor is there coverage for any of the other shareholders, Kathy Mau, Ray York, Kay York, Michael Johnson, and Kara Johnson.

2. No coverage is available for Mau for Count 1 of the Lawsuit, breach of contract, because:
   a. This count is against Mau in his capacity as a shareholder of EWS, an uninsured entity.
   b. Mau also signed the APA on behalf of EWS, however, even if he was acting in his capacity as an EWS officer, EWS ceased being an Insured Entity when it was sold to Sun Well in February 2012 and, since no run-off or tail coverage was purchased for EWS after it was sold to Sun Well, the only coverage for claims against EWS that would be eligible for coverage would have been those first made during the policy period in which EWS was an Insured Entity.
   c. The alleged breach of contract was undertaken by Mau in the service of another entity besides EOI, namely either EWS or AWS, and is excluded therefore by Section IV(l).

3. Count 2 of the Lawsuit, fraud, does not garner coverage because:
   a. As alleged against Mau, it connotes conduct undertaken either in his personal capacity or in his capacity for either EWS or AWS, neither of which is an Insured Entity.
   b. As alleged against EWS, there is no coverage because EWS is not an Insured Entity.
   c. As alleged against Wiedmer, it connotes conduct undertaken either in his personal capacity or in his capacity for either EWS or AWS, neither of which is an Insured Entity.

4. Count 3 of the Lawsuit, civil conspiracy, no coverage is available because:
   a. As alleged against Mau and Wiedmer, it connotes conduct undertaken in their personal capacities or in their capacities for either EWS or AWS, neither of which is an Insured Entity.
   b. As alleged against AWS, there is no coverage because AWS is not an Insured Entity.

5. Count 4 of the Lawsuit, tortious interference with contract. This Count is alleged against Gregory Wiedmer in his AWS capacity and, as AWS is not an Insured Entity, no coverage is available for this allegation.

**In light of the foregoing, no coverage is afforded to this matter under the D&O Part of the Policy.**

*Other Insurance*
The allegations constituting this Claim may give rise to coverage under a number of other insurance policies. If you have not already done so, we recommend that you immediately place all other applicable insurers and insurance policies on notice of this Claim.

*Reservation of Rights*

Jody Jensen
Eagle Operating, Inc.
June 6, 2014
Page 6

Since coverage for this matter is completely precluded based on the reasons discussed above, at this time Twin City will not discuss any other Policy provisions that may also serve to preclude or limit coverage. In the interim, Twin City reserves all rights and defenses it may have under the Policy, at law, or in equity, and acknowledges that EOI does likewise.

Twin City's coverage position is premised upon the allegations asserted and currently known facts. Therefore, it is subject to change as additional allegations and facts develop. If you have additional information you believe should be included in our coverage analysis, please provide us with such information and we will review it for its impact on coverage. In the interim, all rights under the Policy, at law and/or in equity are fully and mutually reserved.

Please feel free to contact me at (212) 277-0792, should you have any questions or wish to discuss this matter further.

Very truly yours,

Julie Ann Levinsohn, Esq.
Senior Claims Consultant


cc:     Brenda Knopp:  Empire Company
        (via email: bknopp@empire-co.com)

Brenda Knopp

| | |
|---|---|
| **From:** | Carley, Susan P (Specialty Commercial + QA) <Susan.Carley@thehartford.com> |
| **Sent:** | Tuesday, March 25, 2014 2:18 PM |
| **To:** | Pat Nickodemus |
| **Cc:** | Brenda Knopp; Carley, Susan P (Specialty Commercial + QA) |
| **Subject:** | Eagle Operating Inc - Policy #KB 0228155 |

Hi Pat, as we discussed yesterday we need to correct Add Subsidiary Endorsement (Endorsement #2).   Since Eagle Well Services, Inc. was sold in February 2012, it should not be listed under this endorsement.

Thus a new Add Subsidiary Endorsement will be issued effective 4/29/13, showing:

* Star Well Services, Inc.
* MW Industries, Inc.

Regards,
Susan

Susan Carley
*Underwriting Specialist*
**Middle Market Executive Liability**
**Hartford Financial Products ("HFP")**

Direct: (303) 646-8831
Mobile: (347) 573-3978
Fax: (866) 201-4242

8430 South Fiddlers Green Circle, Suite 400
Greenwood Village, CO 80111
susan.carley@thehartford.com

**Did you know that you can now quote and bind EPL, Fiduciary and Crime online through the EBC for small businesses with <100 employees and <$15M in revenues?**

Go directly to http://ebc.thehartford.com and it's just few clicks away....

(First, click on *Management & Professional Liability Offering* on the Left...... Then, click on *Management Liability for Small Business* on the right)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information.  If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited.  If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| Exhibit |
|---|
| **D** |

1