**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Robert Mau and Eagle Well Services, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| vs. | ) | **JUDGMENT AND GRANTING** |
| | ) | **DEFENDANT'S CROSS-MOTION FOR** |
| Twin City Fire Insurance Co., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | Case No. 1:16-cv-325 |

Before the Court is Plaintiff Robert Mau's motion for partial summary judgment filed on January 27, 2017. See Docket No. 27. On March 10, 2017, the Defendant filed a response in opposition to the motion and a cross-motion for summary judgment. See Docket No. 46. On March 22, 2017, Mau filed a reply brief to the Defendant's response. See Docket No. 54. On April 7, 2017, Mau filed a response to the Defendant's cross-motion for summary judgment. See Docket No. 59. On April 21, 2017, the Defendant filed a reply. See Docket No. 62. For the reasons set forth below, Mau's motion for partial summary judgment is denied and the Defendant's cross-motion for summary judgment is granted.

## I. BACKGROUND

This case involves a dispute regarding an insurance policy issued by Defendant Twin City Fire Insurance Company ("Twin City") to Eagle Operating, Inc. ("Eagle Operating"). Eagle Operating is an oil and gas production company, and Twin City provided insurance to Eagle Operating for several years. The Twin City insurance policy at issue is the 2013-2014 policy ("the Policy") which was in effect from April 29, 2013, to April 13, 2014. See Docket No. 46-2, p. 3. The Policy covered certain losses stemming from any "subsidiary" of Eagle Operating. The Policy contained a number of attached endorsements, including Endorsement No. 2 which defined

"subsidiary" as including Eagle Well Service, Inc. ("Eagle Well Service"); Star Well Services, Inc.; and MW Industries, Inc. ("MW Industries"). See Docket No. 46-2, p. 52. Endorsement No. 9 to the Policy deleted Endorsement No. 2 and replaced it with Endorsement No. 10, which identified only two "subsidiaries," namely, Star Well Services and MW Industries. See Docket No. 46-2, pp. 60-61.[1] The policy generally provided coverage for the officers and directors of the defined subsidiaries. During the Policy's effective period, Mau served as president of MW Industries and served on its board of directors. See Docket No. 27-6. Mau was also the president of Eagle Well Service and a shareholder of Eagle Well Service, as well as the president of Eagle Operating, during the relevant time period. See Docket No. 59-1.

A. **Sun Well Services' Litigation**

In February 2012, Sun Well Services, Inc. ("Sun Well Services"), through one of its predecessors, entered into an Asset Purchase Agreement with Eagle Well Service, a provider of tools and services for the oil and gas industry, and its shareholders to purchase assets owned by Eagle Well Service. See Docket Nos. 27-8 and 46-3. The parties to the Asset Purchase Agreement were Well Services, Ltd. (Sun Well Services' predecessor); Eagle Well Service; and the shareholders of Eagle Well Service, which included Robert Mau. See Docket No. 46-3, p. 6. MW Industries was not a party to the Asset Purchase Agreement nor did Mau sign the agreement in his

---

[1] The parties disagree on the applicability of Endorsement Nos. 9 and 10. Twin City argues that in March 2014, it issued both endorsements, effective as of April 29, 2013 (the inception date of the Policy), to correct a scrivener's error. See Docket No. 46-1, p. 7. Mau argues the endorsements were issued *after* Eagle Well Service made its claim against the Policy; and neither Eagle Well Service, nor Eagle Operating (the named insured), consented to the endorsements. See Docket No. 59. Although there are factual disputes regarding the Policy's endorsements, the parties' cross-motions for summary judgment can be resolved without addressing this issue.

capacity as president, as discussed below. The Asset Purchase Agreement stated the purchase price as $48,130,924. The Asset Purchase Agreement consummating the sale, which Mau signed as the president and a shareholder of Eagle Well Service, contained a covenant not to compete. See Docket No. 46-3, pp. 30, 47, 49. The Asset Purchase Agreement's covenant not to compete stated, in part:

> For a period of five (5) years from the Closing Date, none of Seller or the Shareholders shall, acting individually or as an owner, shareholder, member, partner, employee, or independent contractor of any Person other than Buyer or one of its Subsidiaries or Affiliates, and Seller and each Shareholder shall cause its Affiliates not to, directly or indirectly, (i) establish, own, manage, operate, control, acquire, invest in or otherwise engage or participate in any business, operation or activity in the Territory that competes with or is substantially similar [to] the Business . . .

See Docket No. 46-3, p. 30.

In April 2012, or two months after the Asset Purchase Agreement was signed, MW Industries sold two well-servicing rigs to American Well Services, LLP ("American Well Services"), a newly formed oil service company that Mau owned with Gregory Wiedmer. At the time of the sale, Mau was president of MW Industries and Wiedmer was vice president.

On December 27, 2013, Sun Well Services commenced a lawsuit against Mau, Eagle Well Service, Wiedmer, and American Well Services ("the Sun Well Services Lawsuit") in North Dakota District Court for Ward County (Civil Case No. 51-2013-CV-01461). See Docket No. 27-8. The introduction in the complaint of the Sun Well Services Lawsuit states as follows:

> 4. The Asset Purchase Agreement dated February 9, 2012 between Well Services, Eagle Well Services, and Eagle Well Services' shareholders (the "APA") included a noncompetition provision that required Eagle Well Services and its shareholders to refrain from owning, managing, operating, controlling, acquiring, investing in, or otherwise participating in a competing business.
>
> 5. The noncompetition provision's restrictions were reasonable in terms of scope, duration, and geographic reach of the restrictions on competition. . . .

3

6. After the sale was finalized, Robert Mau, a principal and shareholder of Eagle Well Services and a party to the [Asset Purchase Agreement], participated in the formation and subsequent operation of American Well Service, a competing business, by providing financing to that competitor. Robert Mau's foregoing actions constituted a breach of the noncompetition provision of the [Asset Purchase Agreement].

7. Robert Mau further breached the noncompetition provision through his operation of another company and by financing the purchase of well service rigs for the use of his affiliate, American Well Service. Robert Mau further breached the noncompetition provision by allowing his affiliate, American Well Service, to compete with Well Services.

8. Upon information and belief, Robert Mau: (a) intended to breach the noncompetition provision by competing with Well Services through his affiliate, American Well Service; (b) defrauded Well Services by concealing his intentions from Well Services prior to the sale when he had a duty to disclose those intentions; and (c) engaged in a civil conspiracy with American Well Service and its principal, Gregory Wiedmer, to defraud Sun Well and to breach the noncompetition provision of the [Asset Purchase Agreement].

See Docket No. 27-8, pp. 1-2. In the complaint, Sun Well Services alleged that MW Industries' sale of the servicing rigs was on terms so favorable as to constitute competition violating the non-compete clause in the APA. Sun Well Services brought claims of breach of contract against Mau and Eagle Well Service; claims of fraud against Mau, Eagle Well Service, and Wiedmer; claims of civil conspiracy against Mau, Wiedmer, and American Well Services; and tortious interference against Wiedmer. See Docket No. 27-8. Neither MW Industries nor Robert Mau, in his capacity as president of MW Industries, were named as defendants in the state court lawsuit.

### B. Insurance Claim

On January 17, 2014, Eagle Operating's broker provided notice of the Sun Well Services Lawsuit to Twin City. See Docket No. 46-8. On January 22, 2014, Twin City acknowledged receipt of the notice and assigned a claims agent to the matter. See Docket No. 46-9. On March

19, 2014, Twin City's representative received a copy of the complaint from the Sun Well Services Lawsuit. See Docket No. 46-10, p. 10. On June 6, 2014, Twin City denied coverage for the Sun Well Services Lawsuit. See Docket No. 27-12. From that point, Mau represented himself in the Sun Well Services Lawsuit, and he alleges to have incurred significant defense costs. The record reveals that Mau and Eagle Well Service ultimately settled the state court lawsuit. See Docket No. 40, p. 4.

### C. Current Litigation

On August 17, 2016, Mau and Eagle Well Service initiated the current lawsuit against Twin City in North Dakota District Court in Ward County. See Docket No. 1-1. In the complaint, Mau and Eagle Well Service sought declaratory relief, seeking a declaration they were insureds under the Policy, and allege claims for breach of the duty of the implied covenant of good faith and fair dealing and breach of contract. See Docket No. 1-1. Twin City removed the case to federal district court on September 8, 2016. See Docket No. 1.

On January 27, 2017, Robert Mau filed a motion for partial summary judgment, requesting the Court find, as a matter of law, that Twin City owed a duty of defense under the Policy and Twin City breached that duty. See Docket No. 27. On March 10, 2017, Twin City filed a response in opposition to the motion and a cross-motion for summary judgment. See Docket No. 46. Twin City's cross-motion for summary judgment requested the Court find that Twin City had no duty to defend Mau or Eagle Well Service and, alternatively, if it had such a duty, its failure to abide by that duty was not in bad faith as a matter of law. See Docket No. 46. On March 22, 2017, Mau filed a reply to Twin City's response. See Docket No. 54. On April 7, 2017, Mau filed a response to Twin City's cross-motion for summary judgment. See Docket No. 59. On April 21, 2017, Twin

City filed a reply. See Docket No. 62. For the reasons set forth below, Mau's motion for partial summary judgment is denied, and Twin City's cross-motion for summary judgment is granted.

## II. LEGAL DISCUSSION

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The non-moving party may not rely merely on allegations or denials; rather, it must set out specific facts showing a genuine issue for trial. Id.

### A. MAU'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Robert Mau filed a motion for partial summary judgment requesting the Court find, as a matter of law, that under the Policy, Twin City owed a duty to defend Mau against the Sun Well Services Lawsuit in state court, and that Twin City breached the duty to defend. See Docket No. 27. In support of his motion for partial summary judgment, Mau argues that, under the Policy: (1)

Mau was an "Insured Person;" (2) the Sun Well Services Lawsuit was an "Insured Person Claim;" and (3) the Sun Well Services Lawsuit was an "insured person claim" for Mau's alleged "Wrongful Act" in his capacity as a director/officer of MW Industries. See Docket No. 27-1, p. 11.

The Policy defines an "Insured Entity" as "any Subsidiary." See Docket No. 46-2, p. 9. Endorsement No. 2 to the Policy added MW Industries to the Policy's definition of a "Subsidiary." See Docket No. 46-2, p. 52. Item 5 of the Policy Declarations demonstrates the Policy provided "Directors, Officers and Entity Liability" coverage. See Docket No. 46-2, p. 4. Under the "Directors, Officers and Entity Liability" coverage portion of the Policy, an "Insured Person" is defined as any "Manager" or "Employee." See Docket No. 46-2, p. 20. The Policy defines "Manager" as "any natural person while such person was or is a(n) . . . duly elected or appointed director, officer, member of the board of managers or management committee member of an Insured Entity." See Docket No. 46-2, p. 9. At all times while the Policy was in effect, namely April 29, 2013, to April 13, 2014, Mau was the president of MW Industries and served on MW Industries' Board of Directors. See Docket No. 27-6.

The "Directors, Officers and Entity Liability" coverage portion of the Policy provides, in pertinent part:

> The Insurer shall pay **Loss**[2] on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** . . . for a **Wrongful Act** by the **Insured Persons** . . .

See Docket No. 46-2, p. 19 (emphasis in original). Under the "Directors, Officers and Entity Liability" coverage portion of the Policy, an "Insured Person Claim" is defined as any:

---

[2] The Policy defines "Loss" as the amount an insured is legally liable to pay as a result of a covered "Claim," which includes "Defense Costs." See Docket No. 46-2, p. 21. "Defense Costs" are defined, in part, as "reasonable and necessary legal fees and expenses incurred in the investigation, defense or appeal of a "Claim." See Docket No. 46-2, p. 8.

7

> (1) written demand for monetary damages or other civil relief commenced by the receipt of such demand; [or]
>
> (2) civil proceeding . . . commenced by the service of a complaint . . .

See Docket No. 46-2, p. 20.

Under the "Directors, Officers and Entity Liability" coverage portion of the Policy, a "Wrongful Act" is defined as any actual or alleged:

> (1) error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by an **Insured Person** in their capacity as such . . .

See Docket No. 46-2, p. 21.

In his motion for partial summary judgment, Mau argues Sun Well Services sued him in state court in North Dakota based on alleged acts and omissions carried out in his capacity as a director and officer of MW Industries and, according to the Policy, Twin City had a duty to defend Mau against the claims brought in the Sun Well Services lawsuit. See Docket No. 27-1. Mau further argues he need not show that coverage existed under the subject insurance policy, but rather he need only demonstrate the *possibility* of coverage existed based on the terms thereof and the allegations of the complaint in the underlying Sun Well Services state court litigation. See Docket No. 27-1; see also Tibert v. Nodak Mut. Ins. Co., 2012 ND 81, ¶ 30, 816 N.W.2d 31 ("When several claims are made against the insured in the underlying action, the insurer has a duty to defend the entire lawsuit if there is potential liability or a possibility of coverage for any one of the claims.").

Under North Dakota law, the parameters of the duty to defend are governed by the allegations in the complaint against the insured. See Pennzoil Co. v. U.S. Fidelity and Guar. Co., 50 F.3d 580, 583 (8th Cir. 1995). Any doubt regarding whether a duty to defend exists must be

resolved in favor of the insured. Tibert, 2012 ND 81 at ¶ 31. When there is doubt regarding whether the injured party's complaint states sufficient facts to bring the injury within the coverage of the insurance policy and the claim "may or may not be covered by the policy," the insurer has a duty to defend. Id. Only if there is no possibility of coverage is the insurer relieved of its duty to defend.

The record reveals the Sun Well Services Lawsuit in state court focused on the Asset Purchase Agreement under which Sun Well Services' predecessor purchased the assets of Eagle Well Service for $48 million, combined with a non-compete clause. Sun Well Services brought claims of breach of contract against Mau and Eagle Well Service; claims of fraud against Mau, Eagle Well Service, and Wiedmer; claims of civil conspiracy against Mau, Wiedmer, and American Well Services; and tortious interference against Wiedmer. See Docket No. 27-8. Mau contends Sun Well Services sued him based on alleged acts and omissions carried out in his capacity as a director and officer of MW Industries. However, it is clear that Sun Well Services' breach of contract claim was not pursued against Mau in his capacity as a director and officer of MW Industries as the Asset Purchase Agreement was entered into between Well Services, Ltd. (Sun Well Services' predecessor); Eagle Well Service; and the shareholders of Eagle Well Service, not MW Industries or its officers or directors. As a result, only Sun Well Services' claims of fraud and civil conspiracy could arguably be based on Mau's alleged acts or omissions carried out in his capacity as the president and director of MW Industries.

Twin City argues the Sun Well Services Lawsuit in state court was brought against Mau for his breach of the Asset Purchase Agreement and in his capacity as an officer or shareholder of Eagle Well Service, not as MW Industries' president or officer. See Docket No. 46-1. Twin City further contends the Sun Well Services' complaint asserted Mau violated the Asset Purchase

Agreement he entered into as president and shareholder of Eagle Well Service by *causing* MW Industries to act. Twin City further argues Mau could have caused a different well-servicing rig provider to act, and Sun Well Services would have brought the very same claims against Mau for his alleged breach of the Asset Purchase Agreement. In support of its argument, Twin City argues Sun Well Services notably did not pursue any claims in its state court lawsuit against MW Industries; MW Industries was never mentioned in either the fraud or civil conspiracy claims in Sun Well Services' complaint; and the acts alleged against Mau did not further the interests of MW Industries, but instead simply furthered the interests of Mau as an individual, or American Well Services.

The Court finds Twin City's arguments to be persuasive. The Court further finds that Sun Well Services' claims against Mau in the state court lawsuit were not based on any alleged actions, inactions, or misdeeds carried out by Mau in his capacity as a director and officer of MW Industries. As a result, the Court finds that Twin City does not owe Mau a duty to defend against the Sun Well Services Lawsuit. Therefore, Mau's motion for partial summary judgment is denied.

### B. **TWIN CITY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Twin City's cross-motion for summary judgment requests the Court find that Twin City had no duty to defend Mau; that Twin City had no duty to defend Eagle Well Service; and Twin City did not engage in bad faith. See Docket No. 46-1.

#### i. **Twin City's Duty to Defend Mau**

As outlined above, because Sun Well Services' claims against Mau in the state court lawsuit were not based on any alleged actions or inactions of Mau carried out in his capacity as a

director and officer of MW Industries, Twin City did not owe Mau a duty to defend him against the Sun Well Services Lawsuit. Therefore, Twin City's cross-motion for summary judgment is granted as it relates to Twin City's duty to defend Mau.

### ii. Twin City's Duty to Defend Eagle Well Service

Twin City also contends it had no duty to defend Eagle Well Service under the Policy as Eagle Well Service was not an "Insured Entity" because Endorsement Nos. 9 and 10 effectively amended the Policy's definition of subsidiary and removed Eagle Well Service. See Docket No. 46-1, p. 25. The Plaintiffs dispute the application and validity of Endorsements Nos. 9 and 10; however, an analysis of the endorsements is not necessary to resolve the issue of whether Twin City had a duty to defend Eagle Well Service.

Twin City argues that even if Eagle Well Service could be construed as a "subsidiary" under the Policy (which it denies), it would have no duty to defend Eagle Well Service because coverage would be excluded by Subpart A of Section V of the Policy entitled "Exclusions Applicable to Insuring Agreement (C)." See Docket Nos. 46-1, p. 25 and 46-2, p. 24. For simplicity's sake, the Court will refer to the referenced exclusion as "Exclusion V(A)(1)." Exclusion V(A)(1) of the Policy states:

> The Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:
>
> **(1)** liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

See Docket No. 46-2, p. 24. Twin City argues that because the Sun Well Services Lawsuit in state court was "based upon, arising from," or "related to" liability under the Asset Purchase Agreement,

11

it is not responsible for defense costs which Eagle Well Service may have subsequently incurred in the Sun Well Services Lawsuit. See Docket No. 46-1, p. 25-26.

The Plaintiffs contend that Exclusion V(A)(1) does not operate to bar coverage for Eagle Well Service because the possibility existed that Eagle Well Service could have been liable to Sun Well Services in the absence of the Asset Purchase Agreement. See Docket No. 59. Specifically, the Plaintiffs argue that Sun Well Services' fraud claim against Eagle Well Service could have created liability outside the sphere of the breach of contract claim. See Docket No. 59. The Plaintiffs argue the non-compete provision in the Asset Purchase Agreement was void under North Dakota law, to the extent it could have been applied beyond one county, and there could be no liability arising from an agreement that never had legal effect. See Docket No. 59, pp. 8-9.

The Plaintiffs further argue that by "liberally construing the allegations of the Sun Well Complaint," Sun Well Services' claim for fraud against Eagle Well Service put Eagle Well Service on notice of claims for both fraud and deceit. See Docket No. 59, p. 8. It is clear from the record the Sun Well Services' complaint only alleges claims of fraud, not deceit. See Docket No. 27-8, pp. 12-13. The Court finds, as a matter of law, that Eagle Well Services was not an "insured entity" under the policy at issue. Further, even if Eagle Well Services was arguably an "insured entity," coverage was excluded under the Policy because any alleged liability was directly related to, based upon, and arose directly from the Asset Purchase Agreement.

### iii.  Bad Faith Claim

Twin City also moved for summary judgment, seeking a declaration that Twin City did not engage in bad faith by denying coverage under the Policy. See Docket No. 46-1. An insurer has a duty to act fairly and in good faith in dealing with its insured, including providing defenses to

claims. See Hartman v. Estate of Miller, 2003 ND 24, ¶ 12, 656 N.W.2d 676. The gravamen of the test for bad faith is whether the insurer acts unreasonably in handling an insured's claim. An insurer acts unreasonably by failing to compensate an insured for a loss covered by a policy, unless the insurer has a proper cause for refusing payment. It is axiomatic there is no breach of the duty of good faith and fair dealing when there is no potential for coverage. Because Twin City had no duty to defend Mau and Eagle Well Service in the Sun Well Services lawsuit in state court, the Plaintiffs' claim of bad faith fails as a matter of law.

Accordingly, the Defendant's cross-motion for summary judgment is granted.

### III.    CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, Plaintiff Mau's partial summary judgment motion (Docket No. 27) is **DENIED** and Defendant's cross-motion for summary judgment (Docket No. 47) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2017.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court